Filed 10/9/13  Nenninger v. Artinian CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

ROBIN NENNINGER,

      Plaintiff and Appellant,

v.

NICOLE ARTINIAN, as Trustee,
etc., et al.,

      Defendants and Respondents.

E056754

(Super.Ct.No. INC1104688)

OPINION

APPEAL from the Superior Court of Riverside County.  Harold W. Hopp, Judge.

Affirmed.

Law Offices of Thomas J. McDermott and Thomas J. McDermott, Jr., for Plaintiff

and Appellant.

Law Offices of Michael Zitomer, Michael Zitomer and Christopher R. Green for

Defendants and Respondents.

1

On February 15, 2011, plaintiff, Robin Nenninger, filed a petition against defendant, Eddie Artinian Revocable Trust (the Trust). She claimed that Artinian's estate owed her $353,000 for loans she made to Artinian during his lifetime.[1]

The trustees of the trust filed a motion for summary judgment, alleging that the statute of limitations barred collection of the loans. The trial court agreed and granted the motion for summary judgment. Nenninger appeals.

FACTS

The facts are simple and undisputed. According to Nenninger, she and Artinian were boyfriend/girlfriend from 1979 to 1984. They renewed the relationship from 2002 until Artinian died on February 15, 2010.

From June 22, 2004, to February 16, 2006, Nenninger loaned Artinian a total of $353,000. All of the loans resulted from oral discussions between them.

Two writings were produced. The first, dated October 12, 2004, was rejected by the trial court and is discussed *post*.

The second writing is dated April 30, 2006, after the last loan. It acknowledges the indebtedness. The interpretation of the document is the central issue in this case.

Nenninger claims the second document is a written promise to pay the indebtedness, i.e., a promissory note, and that its due date is the date of Artinian's death (February 15, 2010).

---

[1] The total claim was for $378,000, but the lower amount is the total of the loans at issue.

2

The Trust argues that the loans were repayable on demand, and that the April 30, 2006, document was merely an acknowledgement of the indebtedness.

## DISCUSSION

1. Statute of Limitations on the Loans

Since the loan agreements were oral, the two-year statute of limitations of Code of Civil Procedure section 339 is applicable. Accordingly, the statute ran from June 14, 2006 to February 15, 2008.

2. The Loans Were Repayable on Demand

An issue at the summary judgment hearing was whether the loan was repayable on demand. At the hearing, Nenninger's counsel stated: "It's obviously . . . a demand note when it started, but what is not accurate is that it continues to be a demand note forever in spite of a new contract." Counsel also conceded that the intention of the parties was that Nenninger would be repaid on demand.

The trial court found that Nenninger's deposition testimony made it clear that she could at any time demand repayment of the loans.

In her deposition, Nenninger was asked: "So you basically agreed that you had the right to demand repayment of the money at anytime? [¶] [Answer:] Yes." The trial court concluded that: "The statute of limitations on a demand note has long been held to begin to run upon the making of the loan. See, e.g., *Tilden Lumber Co. v. Perino* (1934) 2 Cal.App.2d 133."

3

As discussed *post*, Nenninger contends the April 30, 2006, document is a promissory note with a specific due date, i.e., "a promissory note absolutely payable on [Artinian's] death."

    3. <u>The October 12, 2004, Document</u>

The first writing is dated October 12, 2004. At the summary judgment hearing, the trial court sustained the Trust's objection to the document and said: "I don't think you laid a proper foundation, [Nenninger's counsel] to show me that you know what this document is. [¶] [Nenninger's counsel]: I agree, your Honor. I'm not going to argue that document."

On appeal, Nenninger quotes the document to show Artinian's intent and says: "The Court's complete disregard of the agreement raises issues that should be dealt with by this Appellate Court."

While it is possible that counsel's opening brief is referring to the April 30, 2006, document, counsel has not offered any argument or cited any authority to demonstrate that the trial court abused its discretion in refusing to consider the October 12, 2004, document. We therefore follow the trial court's decision and do not consider the document for any purpose.

    4. <u>The April 30, 2006, Document</u>

The parties disagree on the meaning and legal effect of the April 30, 2006, document. The document reads as follows: "4/30/06 [¶] I, Eddie Artinian, owe Robin Nenninger the following: [¶] I borrowed $200,000 . . . from her around May 2004 to purchase 97 Mayfair Drive, Rancho Mirage, CA 92270. If anything happen[s] to me, she

4

is to take over 97 Mayfair Drive.  I am willing it to her.  She has to take over loan or refinance the current loan.  All equity will be hers.  I also borrowed $93,000.00 to buy 117 Avenida Las Palmas, Rancho Mirage, CA 92270 around Sept. 05 plus I borrowed $40,000 from her to buy [the] 1987 Rolls Royce Corniche in about March 06.  [¶]  She can have the Rolls Royce 1987 in payment of $40,000 and she or my Estate can sell 117 Avenida Las Palmas or she can have [the] property and take over payment.  This is if I die.  [¶]  Signature of Eddie Artinian  [¶]  P.S.  [¶]  If at any time she wants the money, she has to give me 6 months to refinance or sell properties or assets.

> "$200,000.00          97 Mayfair
> "$  93,000.00          117 Avenida Las Palmas
> "$  40,000.00          87 Rolls Royce
> "$  10,000.00          Equity Smog Machine
> "$  10,000.00          Loan 12/11/05 to pay my property taxes
> "Total:  $353,000.00

"Signature of Eddie Artinian  [¶]  Love & kisses"

The trial court found that the document was not a written agreement because it was not signed by anyone other than Artinian.  "At best, it is a renewed promise to repay the loans, which, if executed before the running of the statute of limitations, would extend the original promise, waiving the portion of the limitations period that had passed."  The court therefore concluded that the document would only extend the statute of limitations to April 30, 2008, long before the filing of the petition.

We agree with the trial court and the Trust that the document is an acknowledgment of the existing debts.  Code of Civil Procedure section 360 provides that:  "No acknowledgment or promise is sufficient evidence of a new or continuing

5

contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby."

As the trial court found, an acknowledgement with a renewed promise to pay, made within the limitation period, merely starts a new limitation period running. Accordingly, the original limitation period began on the date of acknowledgement or payment if the original statutory period had not already expired. (Code Civ. Proc., § 360.) "'The acknowledgement, say the cases, must be a direct, distinct, unqualified and unconditional admission of the debt which the party is liable and willing to pay.'" (*Foristiere v. Alonge* (1929) 98 Cal.App. 563, 567.)

Accordingly, the statute of limitations on the debt began to run on April 30, 2006, and ended on April 30, 2008. The petition here was filed on February 15, 2011.

5. Nenninger's Primary Argument

Nenninger contends the April 30, 2006, document is "a promissory note absolutely payable on [Artinian's] death." The corollary would be that a two- or four-year statute of limitations would not begin to run until the accrual date, i.e., the date of Artinian's death (February 15, 2010). The filing on February 15, 2011, would therefore be timely.

The problem with the argument is that (1) the document clearly acknowledges the existing debt and (2) clearly acknowledges that Nenninger may demand the money at any time: "If at any time she wants the money . . . ."[2] As discussed *ante*, Nenninger's

---

[2] While the sentence goes on to provide for a six-month period after demand for payment to be made, neither the trial court nor the parties regard the delay as significant for our purposes.

deposition testimony clearly established that the loans were repayable on demand, albeit subject to a six-month waiting period.

Nenninger relies on *Vassere v. Joerger* (1938) 10 Cal.2d 689 (*Vassere*). In that case, a written document said that an employer owed an employee a set sum for wages due to date. It included a promise to pay the amount due with interest on or before a set date. (*Id.* at p. 691.) Two additional acknowledgements of indebtedness followed the first promise. (*Ibid.*)

In *Vassere*, the plaintiff relied on the argument expressed here: "It is the plaintiff's theory upon this appeal that the action is based upon the written acknowledgments and promises therein contained (express and implied) and that the action was therefore timely commenced having been brought within four years after the due date therein fixed." (*Vassere*, *supra*, 10 Cal.2d at p. 692.)

The defendant in *Vassere* relied on a distinction between an acknowledgement before the statute had run and an acknowledgement made after the statute had run. (*Vassere*, *supra*, 10 Cal.2d at p. 692.) Our Supreme Court quoted the rule from *Southern Pacific Co. v. Prosser* (1898) 122 Cal. 413: "'When a debtor makes a new promise before an action is barred upon the original contract, he does not make himself liable a second time for the same debt, and the old promise is not merged in the new one; he merely continues his original liability for a longer term. In other words, he merely waives so much of the period of limitations as has run in his favor. But when his legal obligation is at an end by reason of the lapse of the full period of limitations or of a

7

discharge in bankruptcy, a new promise creates a new obligation and is itself the basis of the action.'" (*Vassere*, *supra*, at p. 692.)[3]

Although the court recognized the rule, it held that it had been misapplied because the complaint did not demonstrate that the action was necessarily barred by the statute of limitations. (*Vassere*, *supra*, 10 Cal.2d at p. 693.) Accordingly, the demurrer was incorrectly sustained. (*Id.* at p. 694.)

Since the April 30, 2006, document in this case is dated within two years of the date of the first loan (June 15, 2004), the *Vassere* case supports the Trust's contention, and the trial court's conclusion, that the document is merely an acknowledgment of an existing debt, which extended the statute of limitations for two years. (*Vassere*, *supra*, 10 Cal.2d at p. 692.)

Nenninger relies on a later part of the *Vassere* opinion which discusses whether the document was conditional or not. The distinction is important because, if conditional, the action is on the new promise whether the promise to pay was made before or after the running of the statute of limitations on the original indebtedness. (*Vassere*, *supra*, 10 Cal.2d at pp. 694-695.) The court found that the promise was conditional because the promise was to pay the wages due at a definite future date. (*Id.* at p. 695.) "In effect, this constituted an offer to pay on condition of forbearance to sue which, when followed, as here, by an actual forbearance to sue, gave rise to a binding unilateral contract. This new

---

[3] The quoted rule from *Southern Pacific Co. v. Prosser*, *supra*, 122 Cal. 413, was reaffirmed by our Supreme Court in *Eilke v. Rice* (1955) 45 Cal.2d 66, 73. The Trust relies on *Eilke*.

and conditional promise, which thereafter ripened into a binding unilateral agreement, being in writing, is governed by the four-year period of limitation and the present action thereon was commenced within time." (*Ibid.*)

Nenninger therefore argues that the April 30, 2006, document is equally conditional, i.e., that it acknowledged the indebtedness but imposed a condition. The condition was that the amounts due would be paid upon Artinian's death.

Again, the problem with the analogy is that the April 30, 2006, agreement contains no implied forbearance to sue. There was no such condition on payment because the document expresses the intent that payment will be made on demand: "If at any time she wants the money . . . ." Thus, repayment on demand continued to be an option for Nenninger and, in effect, an automatic demand was made upon Artinian's death.

Since payment on demand was an option, the document was not conditional. Since the April 30, 2006, document was attached to the complaint, together with the creditor's claim referring to it as an acknowledgment of the prior indebtedness, the trial court was able to conclude from the undisputed facts that the claim was barred by the statute of limitations. Accordingly, the trial court properly granted the Trust's motion for summary judgment.

6. <u>Nenninger's Other Arguments</u>

Nenninger makes several other arguments. First, she contends that a four-year statute of limitations did not begin to accrue until Artinian's death. However, the statute of limitations on a demand note begins to accrue immediately. (*Tilden Lumber Co. v. Perino*, *supra*, 2 Cal.App.2d 133.)

9

Nenninger also argues that payment could not be required until Artinian's death, citing *Bank of America etc. Assn. v. Gillett* (1940) 36 Cal.App.2d 453, 455. Nevertheless, in the present case, payment could be required on demand at any time. The accrual argument is not persuasive.

Second, Nenninger argues that Artinian intended to waive the statute of limitations until his death. However, other than inferences possible from the document, there is no evidence to support the theory, or any suggestion that Artinian consulted counsel or even knew the meaning of the legal term.

Third, Nenninger argues that there was a contract in writing to pay $353,000, and the four-year statute of limitations was applicable. There was, of course, no written bilateral contract and there was no unilateral contract because there was no actual forbearance to sue as there was in *Vassere*, *supra*, 10 Cal.2d at page 695.

Generally, the trial court rejected the theory that the April 30, 2006, document was a promissory note with a specific due date, the date of death. It found that the document was an acknowledgement of the existing debt, that the acknowledgement extended the two-year statute of limitations on the original loans, and that the debt was payable on demand. Accordingly, the trial court properly concluded that the document was not a new promissory note with a specific due date.

10

DISPOSITION

The judgment is affirmed.  Respondents to recover costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

KING
J.

11